# PENN. NATURAL GAS CO. v. J. W. COOK.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 22, 1888—Decided January 7, 1889.

(a.) A natural gas company, incorporated under the act of May 29, 1885, P. L. 29, with another such company as surety, and without an order of court, gave a bond for permission to enter on lands and lay a gas line.

(b.) The bond was executed in the names of the companies, one by the general manager, the other by the president, without the corporate seals, but with scroll seals to the signatures.

(c.) The condition was, that the obligors should pay "all damages of whatsoever nature and kind that may be suffered or sustained" by the obligee from the construction and repairs of the line, payable forthwith on the completion of the construction and the repairs.

1. In such case, by giving the bond the constructing company recognized the obligee's title and his right to damages, and he might proceed directly upon the bond without a previous assessment by viewers, under the incorporating act.

2. An objection to the bond for defective execution made after it had been admitted in evidence and after the plaintiff had closed his case, came too late, the only remedy then being a motion to strike the offer from the record.

3. The signature of the agent of a corporation executing an instrument in its behalf, being proved, a common seal will be presumed to have been intended as the seal of the corporation, in the absence of competent evidence to the contrary.

4. Moreover, even if the agents exceeded their powers, the companies might not avail themselves of the benefit of the bond, and at the same time disavow their agents' authority.

5. Under the provisions of the bond, the obligee was entitled to recover damages not only for injuries directly occasioned, but for consequential injuries in a loss of local trade resulting in the enforced removal of his business.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, WILLIAMS and HAND, JJ.; CLARK, J., absent.

No. 256 October Term 1887, Sup. Ct.; court below, No. 584 December Term 1886, C. P. No. 1.

On December 4, 1886, a summons in debt was issued in an action by John W. Cook, for use of A. Cook, against the Pennsylvania Natural Gas Company, the United Gas Fuel Company and B. F. Rafferty. On December 14th, the defendants pleaded, nil debet.

At the trial on May 11, 1887, the defendants filed the additional plea of non est factum. It then appeared that in May, 1886, J. W. Cook, the plaintiff, under a lease from the Pittsb. & W. R. Co., was in possession of a landing on the Allegheny river, at the foot of School street, Allegheny city, the landing extending some distance above and below said street. School street, at right angles with the river, had never been actually opened, although it was upon the city plan. In an eddy adjacent to the shore, the plaintiff had a floating saw mill, a floating planing mill, and a floating dock for building and repairing barges. Access from the shore to the mills was over a float which lay at the foot of School street, and a bridge connected the float with the mills. By permission of the city, the plaintiff had made a plank road on School street, to reach the landing.

The Penn. N. Gas Co. was a corporation, organized under the act of May 29, 1885, P. L. 29, and on May 19, 1886, was constructing a line or lines for the conveyance of natural gas from the foot of School street across the river to the foot of Third street, in Pittsburgh, B. F. Rafferty being in charge of

the work. The plaintiff's float and mills were in the way. Mr. Rafferty proposed to move them and Mr. Cook objected. After some controversy, the company gave to the plaintiff the bond on which suit was brought, and were thereupon permitted to enter and move his float and mills so as to enable them to dig the trench and lay their lines.

B. F. Rafferty, one of the defendants, called by the plaintiff as on cross examination, testified that in May, 1886, he was general manager of the Penn. N. Gas Co.; that his signature to exhibit 1 was genuine, and that the name of the Pennsylvania Natural Gas Co. thereto, was signed by him by the authority of the company: "I can't say that I saw the seal attached, but I think I did." J. M. Cooper, called by plaintiff, testified that in May, 1886, he was the secretary of the United Gas Fuel Co., and placed his signature and the signature of his company, and its seal, to exhibit 1; "I had the authority of the president at the time it was executed."

J. W. Cook, the plaintiff, on the stand, testified to the occupation by the defendant of the foot of School street, the removal of his plank road, the digging up of the street, and as to the length of time that elapsed before the pipes were laid and covered.

Q. What was the consequence of this interruption to your business?

Objected to, as incompetent and irrelevant.

By the court: The witness may state what he lost and how he lost it, and may explain wherein it cost him damage and how much: Exception.[1]

The witness then testified, inter alia, that the occupation of the landing and the eddy of the river at that point, prevented the continuance of his business; when low water came, he could not side or dock boats because of piles of dirt caused by dredging and dumping; the men objected to working over the pipe line; the only thing he could do was to hunt another location, which he did, and moved into the Monongahela river, to the South Side.

Plaintiff's counsel proposed to show by the witness on the stand that, by reason of the operations of the defendant he was obliged to leave this landing; that he could get no other place to carry on his business until he went over to the South

Side; that he had a certain amount of local trade connected with his business which was lost altogether by his removal to the South Side.

Objected to as incompetent and irrelevant.

By the court: You may show that by reason of this you suffered an actual loss in business: Exception.[2]

The plaintiff testified in support of the offer.

The counsel then offered in evidence the bond in suit, marked exhibit 1; also, the lease from the Pittsb. & W. R. Co. to the plaintiff.

Objected to as incompetent and irrelevant, and no proof of title in plaintiff, and because the lease in question shows that it had expired at the date of the injury complained of, and, further and particularly, object to the bond because there is no proof here of any reference to viewers or of any statutory proceedings had in the matter.

By the court: Objection overruled.

The bond thus admitted was the following:

Know all Men by these presents, That we, Pennsylvania Natural Gas Company, The United Gas Fuel Company, of Pittsburgh, Pa., and B. F. Rafferty, of the City of Pittsburgh, are held and firmly bound unto John W. Cook, of the City of Allegheny, in the sum of ten thousand dollars, to be paid . . .

Witness our hands and seals the 19th day of May, in the year of our Lord one thousand eight hundred and eighty-six.

The condition of the above obligation is such that if the above bounden Pennsylvania Natural Gas Company, United Gas Fuel Company, and B. F. Rafferty, their successors, heirs, executors, administrators, and assigns, do well and truly pay or cause to be paid unto the said John W. Cook, his certain attorney, heirs, executors, administrators, or assigns, all damages of whatsoever nature or kind that may be suffered or sustained by said Cook, by reason of the excavating for, putting together, burying, constructing, completing and repairing a line or lines of gas-pipe, through the bed and waters and up the shore and bank of the Allegheny river at the eddy or landing now occupied by said Cook, at the foot of School street in the city of Allegheny, and through the mill and lumber yard now occupied by him adjoining said eddy and landing, said damages to be paid forthwith upon the completion of such line

across said river as far as Killbuck street, Allegheny, and immediately on completing any repair or repairs; this bond to remain in force for thirty days, and if any work of construction or repair is done after thirty days a new bond is to be given without any fraud or further delay, then this obligation to be void, otherwise to be and remain in full force and virtue.

PENNA. NATURAL GAS COMPANY,
    by B. F. RAFFERTY, Gen. Man.    [SEAL.]

B. F. RAFFERTY.

UNITED GAS FUEL COMPANY,
    by J. M. GUFFY, President.    [SEAL.]

Attest: J. M. COOPER, Secretary.

Several other witnesses having been examined upon the subject of the damages occasioned by the construction of the lines, the plaintiff rested.

Then the defendants further objected to the bond offered in evidence by the plaintiff, " because said bond is not under the seal of the Pennsylvania Natural Gas Company, and there is no proof of any seal of the said company on it. Second, because there is no proof of any damage done by the United Gas Fuel Company in this matter, and because the execution of such a bond by the United Gas Fuel Company is ultra vires and void, and there is no proof of any power in the president and secretary of said company to execute such bonds."

By the court: Objection overruled.[3]

The defendants moved the court for a judgment of nonsuit, on the ground (1) that the act complained of was done by a natural gas company in the exercise of its franchises, and the statute authorizing the incorporation of such companies has provided a method of assessing damages, which method must be strictly followed, and (2) the plaintiff has wholly failed to prove title in the property occupied or damaged.

This motion was refused.

At the close of the case upon the evidence, the court, COLLIER, J., charged the jury as follows:

The only question in this case, is how much damage has the plaintiff sustained by reason of the acts of the defendants?

The defendants gave to the plaintiff a bond, in writing, stating exactly what they agreed to do, and hence you are re-

lieved from any contest upon that, although there are legal questions raised which will have to be determined hereafter. For the present, so far as we are now concerned in trying the case, the bond stands unimpeached and unimpaired. . . . .

Now, gentlemen, the main question is, what damages were sustained by the plaintiff? What did the parties do? Upon that there is a variety of testimony. The plaintiff claims very large damages. The defendants contend that there was very little damage, merely nominal, that there was no real injury; and that the greatest injury Mr. Cook sustained was because he chose to give up and drop his whole business there and move away, for the reason that he did not have things just as he wanted them.

On the question of damages, it is first contended that the defendant companies went up School street with their mains. You have heard the law very properly stated that a gas company has a right to go up a street if it does so in a proper manner; particularly upon getting the consent of councils of the city. They can lay their pipes in the streets, and if they do no more damage than merely cutting up the street, and laying the pipes, no one can complain. But in this bond the defendants agree that if any damage is sustained by reason of laying the pipe up the bank, and as described here, they would pay for it, any actual damage. Hence, as I said, it is a question of proof of damage.

Now, the plaintiff alleges that the defendants moved away his floats; kept him for some days from conducting his business. If that be the case, whatever his actual loss for that time would be, you ought to allow him under this agreement. The next item of plaintiff's claim is that they tore up his plank road which he had built on School street. He was allowed to build it for his own use and they tore it up and did not put it back. It would make no difference whether it was on the street or not. You all know if you have permission to make a plank road and a stranger comes along and takes it up, he must pay for it.

Then, after these matters of damage were committed, and after the pipes were laid, you come next to the most important part of the case, and that is the plaintiff's giving up his business, taking his boats, mills and everything away and moving to an-

Charge of Court below.

other place.  To allow him to recover damages for that, there must be some necessity shown for it.  He could not give up his whole business there because there were some inconveniences, some damage to him, and go off to another place and hold the defendants liable for all his loss in business.  That could only be done from some necessity, such as is claimed here, that it was absolutely unsafe and dangerous to life to stay there, something of that kind.  It is claimed by Mr. Cook that he was compelled to move ; that they laid their pipes under one end of his boat near where his saw-mill apparatus was, and that they leaked ; that it was actually dangerous and unsafe, and he had to move away on that account.  Even if that were true, you must judge whether he was justified in doing that.  Could the leaks have been mended ?  He must first try to see whether that could not have been rectified.  If it was an absolute necessity that he move, if it was unsafe to stay there, and there was no use to stay there, and he could not, then he could go away and hold the defendants for the loss occasioned by that.  You are the judges of that.  You know the facts that surround human life better than I.  I can give you the rule of law, and you will apply it to the evidence. You will say when you come to that matter of damage, whether Mr. Cook was justified in giving up a large business in a place like that and going off without anything more, and charging all the loss to the defendants.  There must be a necessity for it ; it must be unsafe to remain there, and you are the judges of that.

[Then there is a claim of damage for the gravel that was dumped there.  You will say how much the damage would be on that account, if any.  The learned counsel for defendants claims that was done by a contractor, and the defendants had nothing to do with it.  That is correct, providing there was no agreement in writing that they would pay any damages sustained by the plaintiff—not only damages under the act of assembly, but any consequential damages.  Any damages he actually sustained he would be legally entitled to in this suit.][18]

There are other items of damage, but I think these matters are sufficient to explain the law to you.  As to the question of the street, between high- and low-water mark, the ordinance

Charge of Court below.

expressly lays out that street to the river, and wherever that street is, the city would have a right to give any company a right to put its pipes in it.

The court is requested by the plaintiff to charge:

1. If the jury find that the plaintiff, on the faith of the bond in suit, permitted the defendants to remove his mill and boats and occupy his landing and eddy, and to lay a line of gas pipe through the same, the plaintiff is entitled to recover the actual loss sustained by him by reason of the laying of said pipe line.

Answer: Affirmed.

2. If the jury find that by reason of the laying of said pipe line through plaintiff's eddy and landing, and the manner in which it was laid and the work done in laying the same, the plaintiff could not safely and conveniently resume his business at that place after the pipe was laid, the plaintiff is entitled to recover the loss sustained by him in removing to another location; and, in estimating such loss the jury should allow the plaintiff for the stoppage of his business, the improvements and boats that were rendered of no value by the removal, all the expenses incident to the removal, and a fair compensation for the loss of business sustained by the removal.

Answer: Affirmed, with the exception of the word, conveniently, which is refused.[4]

The court is requested by the defendants to instruct the jury:

1. That under all the evidence the verdict must be for defendants.

Answer: Refused.[5]

If the first point be refused, then the court is respectfully requested to instruct the jury as follows:

2. That the alleged bond of the Pennsylvania Natural Gas Company, not being under the seal of said company, there can be no recovery against said company under the pleading and evidence in this action.

Answer: Refused.[6]

3. That the act of the president and secretary of the United Gas Fuel Company, in executing said alleged bond, was and is, in so far as said United Gas Fuel Company is concerned, ultra vires and void, and there can be no recovery against said United Gas Fuel Company.

Answer : Refused.[7]

4. That the measure of liability of the defendants, if any liability there be, is the measure prescribed by the act of assembly of May 29, 1885, relating to Natural Gas companies, and no greater or other liability.

Answer : Refused.[8]

5. That the deposit of gravel upon the bed of the Allegheny river by the contractor or agents of the Pennsylvania Natural Gas Company, was in no respect an incident of the laying of the pipe of said company, and the damages, if any, caused by said deposit of gravel, as alleged by plaintiff, are not damages resulting from the laying of said company's gas pipe, and there can be no recovery for the same in this action.

Answer : Refused.[9]

6. That under the law, the Pennsylvania Natural Gas Company had a right to enter upon and lay down its pipes in School street in the city of Allegheny, and there can be no recovery of damages by plaintiff in this action for such entry, and the obstruction, if any, caused thereby.

Answer : Refused.[10]

7. That the measure of damages in this case is the difference, if any, between what the leasehold interest or license of plaintiff in the river front, at or near the foot of School street, would have sold for, unaffected by the obstruction, and what it would sell for, as affected by said obstruction, without reference to the person of the owner or the state of his business.

Answer : Refused.[11]

8. That no damages can be allowed to plaintiff for injury to his business or expense of moving his boats away.

Answer : Refused.[12]

10. That under the pleadings and evidence there can be no recovery in this action.

Answer : Refused.[13]

11. That the evidence of plaintiff and defendants discloses the fact that the pipe of said Pennsylvania Natural Gas Company was laid wholly upon School street, a public street of the city of Allegheny, and the right of said gas company, under its charter, was superior to that of the plaintiff, and there can be no recovery for any alleged damages caused by such laying.

Answer : Refused.[14]

12. That the plaintiff had no right to keep his float or flat-boat at the foot of or upon School street, or to have any apron or landing thereupon, and he is entitled to no damages for the removal of said float or flat-boat.

Answer: Refused.[15]

13. That there is no proof of authority in B. F. Rafferty to execute the bond sued on.

Answer: Refused.[16]

14. That under the law the rights of the public, and of the Pennsylvania Natural Gas Company, in School street, extend to low-water mark in the Allegheny river.

Answer: Sufficiently answered in the general charge.[17]

Mr. Dickey: There is one matter I desire to call your Honor's attention to: The evidence was, that no gas was turned into this pipe until after the plaintiff had moved away.

By the court: Of course, you understand, gentlemen, that we do not generally go over the testimony in detail; we leave that to you; but that was testified to, and, of course, if that was the case, if there was no gas turned into the pipes up to the time Mr. Cook moved away, he had no right to go away and visit the defendants with that loss and damage. If the gas was not turned on when he went away, he ought to have staid there until he could see whether there was any damage from that, and even if there was some gas escaping that would not justify him in removing. If, after he had tried to have it remedied and could not, then he would be justified in moving.

The jury returned a verdict for the plaintiff for $4,000. A rule for a new trial, subsequently argued, was refused on condition that a remittitur of the excess of the verdict over $3,000 be filed, which being done, judgment was entered upon the verdict as reduced, when the defendants took this writ and assigned as error:

1–3. The admission of plaintiff's offers.[1 to 3]

4. The answer to plaintiff's 2d point.[4]

5–17. The answers to defendants' points.[5 to 17]

18. The part of the charge embraced in [ ][18]

Mr. *George Shiras, Jr.* (with him *Mr. Charles C. Dickey*), for the plaintiffs in error:

1. The plea of non est factum put upon the plaintiff the proof of the execution of the instrument sued on. No seal of the Penn. N. Gas Co. was upon the bond, and no proof of corporate authority to execute the writing was offered; not a scintilla of proof that the board of directors of the company even knew of the existence of the paper. There must be proof of some corporate action: Allegheny Co. Work House v. Moore, 95 Pa. 408. When a sealed instrument is declared upon the seal must be proved or there will be a variance: Scott v. Horn, 9 Pa. 407. As to the United Gas Fuel Co., there was also no proof of corporate authority. This company appears to have been a mere volunteer. The act of 1885, incorporating such companies, confers no power to become sureties, and the act of the president and secretary was clearly without authority and void: § 10, act of May 29, 1885, P. L. 29; Morawetz on Corp. § 512; Metropolitan El. Ry. Co. v. Railway Co., 15 Amer. & E. R. C. 53; Hart etc. R. Co. v. Creswell, 5 Hill 383.

2. Under the adjudicated cases, it was clearly incompetent to allow the plaintiff to prove loss of profits which he might have made. The measure of damages in such cases is the difference between what the property would have sold for, as affected by the injury, and what it would have brought, unaffected by such injury, without reference to the person of the owner, or the state of his business: Watson v. Railroad Co., 37 Pa. 469: East Brandywine etc. R. Co. v. Ranck, 78 Pa. 454; Philadelphia v. Linnard, 97 Pa. 242; Pittsb. & L. E. R. Co. v. Robinson, 95 Pa. 426.

3. It will be observed that the condition of the writing sued on, was that the company should pay all damages that might be suffered or sustained by reason of the excavating for, putting together, burying, constructing, completing and repairing a line of pipe, etc. Nothing is said about damages for the maintenance of the line; and the removal of the plaintiff was not caused by the laying of the line, but by his apprehension that it might thereafter become unsafe for him to remain. Moreover, the depositing of gravel 300 feet below School street, was not a necessary incident to the pipe-laying. Even if the action had been brought to recover for negligence, the corporation would not be responsible for the conduct of an independent contractor: Edmundson v. Railroad Co., 111 Pa. 316.

*Mr. Levi Bird Duff*, for the defendant in error:

1. The signature of the agent of a corporation executing an instrument on its behalf being proved, the seal, though mere paper and a wafer stamped with the common desk seal of a merchant, will be presumed to be intended as the seal of the corporation until the presumption is rebutted by competent evidence: Angell & Ames, Corp. § 226. Where a corporation makes a contract through an agent, who puts to it a seal, it becomes by law the deed of the corporation, though it have not their common seal: Porter v. Railroad Co., 37 Me. 349; Mill Dam v. Hovey, 21 Pick. 417; Bank of Middlebury v. Railroad Co., 30 Vt. 159; Hutchins v. Byrnes, 9 Gray 367; Haven v. Adams, 4 Allen 80; Eureka Co. v. Bailey, 11 Wal. 488.

2. The case went to trial on the plea of nil debet, payment, etc., which admitted the execution of the bond: Parkinson v. Parker, 85 Pa. 313. And the bond was actually admitted without objection to its validity or mode of execution, until after the plaintiff had closed his case. The plea of non est factum was also filed during the trial. If the objection had any merit, it came too late. As to the United Gas Fuel Co., there is no proof that the company executed the bond as surety, nor any proof that it had not as much interest in the line as the Penn. N. Gas Co. Being duly executed by the officers of the company, it is prima facie valid; the court will not presume it ultra vires.

3. No authority is shown for the position that the plaintiff had no right to sue on the bond without first having viewers appointed. The bond does not provide that the damages shall be paid when ascertained according to the act of assembly; they are payable forthwith on the completion of the line to Killbuck street. Moreover, the objection came too late, after plea pleaded. "An objection to the jurisdiction of a court, which goes not to its judicial power, but to the mode in which the case is brought before it, will not avail the defendant after appearance and plea in bar:" Schenley v. Commonwealth, 36 Pa. 29.

4. The jury have found that the plaintiff, on the faith of the bond in suit, permitted the defendants to remove his mill and floats, to occupy his landing and eddy, and to lay a line of gas

pipe through them; that plaintiff's business was stopped, could not be safely resumed, and he was obliged to remove to another location. Independent of the stipulations of the bond, the rule of damages applied in the case is fully sustained by P. & R. R. Co. v. Getz, 113 Pa. 214. The loss of business was a consequential injury for which the defendants were liable by the terms of the bond and the rulings of this court. They were not obliged to give the bond, but having done so they must comply with its terms: Buckwalter v. Bridge Co., 38 Pa. 281; Cooper v. Smith, 9 S. & R. 26; P. & L. E. R. Co. v. Jones, 111 Pa. 204.

OPINION, MR. JUSTICE PAXSON:

The two principal questions presented by this record relate to the validity of the bond sued upon, and to the measure of damages. The bond in question purports to have been executed by the Pennsylvania Natural Gas Company, and by the United Gas Fuel Company, and was given to the plaintiff below, to indemnify him against "all damages of whatsoever nature or kind that may be suffered or sustained by said Cook by reason of the excavating for, putting together, burying, constructing, completing, and repairing a line or lines of gas pipe, through the bed and waters, and up the shore and bank of the Allegheny river, at the eddy or landing now occupied by said Cook, at the foot of School street, in the city of Allegheny, and through the mill and lumber yard now occupied by him, adjoining said eddy and landing, said damages to be paid forthwith upon the completion of such line across said river as far as Killbuck street, Allegheny, and immediately on completing any repair or repairs."

This bond was signed for the Pennsylvania Natural Gas Company, "by B. F. Rafferty, General Manager," as also by the said Rafferty individually; and on behalf of the United Gas Fuel Company, "by J. M. Guffy, president," attested by "J. M. Cooper, secretary." The seal attached in each instance was an ordinary scroll. The action below was debt and the plea nil debet. The plea of non est factum was added upon the trial. When the bond was offered in evidence it was "objected to as incompetent and irrelevant, and no proof of title in the plaintiff, and because the lease in question shows

that it had expired at the date of the injury complained of; and further and particularly object to the bond, because there is no proof here of any reference to viewers or any statutory proceedings had in the matter." The objections were overruled and bill sealed for the plaintiff.

None of these objections was sufficient to exclude the bond. The last one has the most force, but even that is slight. There was no need of any formal statutory proceedings to condemn this property and assess the damages. The defendant company might have proceeded under the statute to file a bond in court and have a jury appointed to assess the damages. Instead of doing so a voluntary bond was tendered to and accepted by the plaintiff, and the company entered at once upon his property and laid their pipes. In doing so they recognized plaintiff's title and right to damages.

After the plaintiff had closed his case the counsel for defendants made the further objection to the bond, that it was not under the seal of the Pennsylvania Natural Gas Company, and that as to the United Gas Fuel Company, the bond is ultra vires and void, there being no proof of any power in the president and secretary of said company to execute such bonds. At the time these objections were made, the bond had already been admitted in evidence, and properly so, for anything that appears in the case. The second objection, therefore, came too late. The only remedy in case it had been improperly admitted, was to move to strike it out. This was not done.

We are not clear, however, that had such a motion been made it would have availed the defendants. The contract was executed. The defendants had availed themselves of the consideration. They had obtained all they needed from the plaintiff, and the objection that the bond was executed without authority of the respective corporations came with an ill grace at such a late hour. There is a long series of cases—some of them very recent, to which I need not refer specifically—that when an agent exceeds his authority, his principal cannot avail himself of the benefit of his act and at the same time repudiate his authority. This principle rests upon the solid foundation of natural justice and common honesty. There was no proof whatever in regard to the seals. It is said in Angell & Ames on Corporations, § 226 : " The signature of the agent

of a corporation executing the instrument on its behalf, being proved, the seal, though mere paper and a wafer, stamped with the common desk seal of a merchant, will be presumed to be intended as the seal of the corporation until the presumption is rebutted by competent evidence." There are numerous other authorities to the same point. I will refer only to Mill Dam v. Hovey, 21 Pick. 417; Porter v. Androscoggin Railroad Company, 37 Me. 349; Bank v. Rutland Railroad Company, 30 Vt. 159; Hutchins v. Byrnes, 9 Gray 367; Haven v. Adams, 4 Allen 30; Eureka Company v. Bailey, 11 Wal. 488.

The only remaining question to which I refer is that of damages. This is raised by the 1st, 2d, 4th, 8th, 11th, 12th, and 14th assignments. We see no error in the rulings of the learned judge below upon this point. He merely enforced the rule adopted by the parties themselves, and expressed in the bond. That instrument covered " all damages of whatsoever nature or kind that may be suffered or sustained by said Cook." This is broad enough to embrace all damages allowed by the court. The parties might have stipulated for a narrower rule, but they did not, and we do not sit here to make their contracts for them.

Judgment affirmed.

