GEORGE CALDWELL AND NELSON LARKINS, PLAINTIFFS IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1.　In order for this court to review testimony on the ground that it was erroneously admitted in evidence, and such testimony was given in answer to a proper question or in narrative form, or if given in answer to a question and being as an answer in its entirety, or as a portion of it, not responsive to such question, the record should show that there was a motion in the trial court to strike out such testimony and if overruled that there was an exception to such ruling, or that an instruction was asked and refused directing the jury to disregard such testimony, with an exception to such ruling.

Caldwell and Larkins v. The State of Florida—Opinion of Court.

2.  This court must assume that a question propounded to a
    witness was proper until the contrary is made to appear
    by a statement of the question in the record and by
    proper objection thereto and exception to an unfavorable
    ruling thereon.

3.  The defense of an alibi to be available must cover the whole
    time when the presence of the defendant was required
    to accomplish the crime, and is sufficient to acquit if it
    raises a reasonable doubt in the minds of the jury whether
    or not the defendant was present when the crime was
    committed, but when the proof of an alibi depends upon
    the credibility of the witnesses and the weight of evidence,
    the jury are the sole judges whether the evidence raises
    such reasonable doubt.

4.  The law in this State is settled that a jury may convict a
    defendant upon the uncorroborated testimony of an accom-
    plice.

5.  Where there is evidence to support a verdict and its pro-
    priety depends on the credibility of witnesses, the appel-
    late court can not interfere.

This case was decided by Division B.

Writ of Error to the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the
Court.

*Nat R. Walker,* for Plaintiffs in Error.

*W. H. Ellis, Attorney-General,* for the State.

HOCKER, J. At a special term of the Circuit Court of
Leon county held in January, 1905, the grand jury found
and presented an indictment against Isham Edwards,
George Caldwell and Nelson Larkins containing two

counts; in the first of which they charged Isham Edwards with the murder of N. W. Eppes, in said county on the 3rd of September, 1904, by shooting him in the back of the neck and head; that George Caldwell was present aiding and abetting said Edwards in committing the said murder, and that Nelson Larkins before the said murder was committed aided and assisted Edwards to commit the murder. In the second count the indictment charges George Caldwell with shooting and murdering N. W. Eppes in said county on the 3rd of September, 1904; that Isham Edwards was present aiding and abetting Caldwell, and that Nelson Larkins before the committing of the said murder aided and assisted Caldwell in committing said murder. The indictment is in technical form. The defendants on arraignment severally pleaded not guilty. There was a severance and Isham Edwards was tried separately from the other two defendants. On the 20th of January, 1905, Caldwell and Larkins were put on trial. They were found guilty of murder in the first degree, and sentenced to be hung. From this sentence and judgment they sued out a writ of error.

There are eight assignments of error here, *viz*: First and second, the court erred by refusing to sustain the plaintiffs objection to that part of the testimony of Marshall Courtney, in which a conversation took place between said Courtney and one Isham Edwards who was an accomplice and jointly indicted with the defendants in error, to-wit: "Isham Edwards was in the buggy with me and George Caldwell was in the road cart with Mr. Munford right behind. I had a conversation with Isham which was entirely voluntary on his part. George was in the road cart just behind the buggy, the length of a horse to the buggy and was close enough to have heard the

conversation between Edwards and myself." The objection to this question was "that George Caldwell was not present and in hearing distance of Isham Edwards at the time of the conversation." The court overruled this objection, and the defendant excepted to the ruling. After the court overruled this objection the defendant again objected "that the State has not shown to the court that the defendant George Caldwell at the time of this confession, assented to the confession made by Isham Edwards to Marshall Courtney." This objection was overruled, and exception noted. The bill of exceptions gives the testimony of Marshall Courtney in narrative form only and we do not know what the question was that drew out the testimony objected to. There are no objections to any questions propounded to him, and no rulings thereon. The confession of Isham Edwards was then given by the witness, in which he implicated both Caldwell and Larkins in the murder of Eppes. The record does not show that the defendants made any motion to exclude the testimony, or requested the court to instruct the jury to disregard it.

In the case of Kissinger v. Staley, 44 Neb. 783, 63 N. W. Rep. 55, the court in its opinion on page 786, says: "If the testimony, of the admission of which complaint is made, was erroneous, it can not avail the plaintiff in error, for the reason that the record is not in such condition as to raise or present the question of the correctness of its admission. If it was given in response to an interrogatory, there should have been a proper objection to the interrogatory and a ruling obtained thereon, and, if adverse, an exception taken. If the evidence claimed to be objectionable was recited in a narrative form or volunteered by the witness, or if given in answer to a question

and being as an answer in its entirety, or as a portion of it, not responsive to such question, there should have been a motion to strike it out and, if overruled, an exception taken," citing authorities. See Ortiz v. State, 30 Fla. 256, text 269, 11 South. Rep. 611; Payne v. Dicus, 88 Iowa 423, 55 N. W. Rep. 483; Marks v. King, 64 N. Y. 628; Pennsylvania Natural Gas Co. v. Cook, 123 Pa. St. 170, 16 Atl. Rep. 762; Chouteau v. Jupiter Iron-Works, 94 Mo. 388, 7 S. W. Rep. 467; Fath v. Thompson, 58 N. J. L. 180, 33 Atl. Rep. 391; Kansas Farmers' Fire Ins. Co. v. Hawley, 46 Kan. 746, 27 Pac. Rep. 176; Hagan v. Hachemeister, 114 N. Y. 566, 21 N. E. Rep. 1046; Higginbotham v. State, 42, Fla. 573, 29 South. Rep. 410; Dickens v. State, decided at present term; Schley v. State, 48 Fla. 53, 37 South. Rep. 518. It is settled doctrine in this court that it can not consider any objections to the admissibility of evidence except such as were made in the trial court. Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656, and cases cited. Any other rule would be unfair to trial judges. We find no error in these rulings.

The third and fourth assignments of error are based on action of the trial judge in overruling objections to the testimony of Charles Dickenson " who testified that Isham Edwards said that George Caldwell took the gun and shot Mr. Eppes." Mr. Dickenson's testimony is given in narrative form in the record and is as follows: "That he was on the train which was conveying the three prisoners Nelson Larkins, George Caldwell and Isham Edwards to Jacksonville after the death of Mr. Eppes, and that while on the train he heard Edwards say that he (Edwards) was sitting on Larkins' store porch, when Mr. Eppes passed just after dark, and that Nelson Larkins,

himself and George Caldwell ran after Mr. Eppes, and George Caldwell took the gun and shot Mr. Eppes. George Caldwell and Nelson Larkins were present and could hear this statement. The witness, Mr. Dickenson, further testified that the prisoners Larkins and Caldwell and Isham Edwards were hand cuffed and sitting in a seat behind the seat on which he sat when he made his confession." Then the record proceeds: "Thereupon the defendant Larkins by his counsel, objected thereto upon the ground that nothing had been shown to the court that this confession was made in the presence and assented to by Larkins the defendant." This objection was overruled, and the defendants' attorney then objected upon another ground, to-wit: "That Isham Edwards having been jointly indicted with the defendants Nelson Larkin and George Caldwell for the same offense and Isham Edwards having been tried at this term of the court and convicted of said offense, and was now in the court room could so testify—thereupon said testimony as given by Mr. Dickenson is entirely hearsay and totally inadmissible." The court overruled this objection. The question or questions which drew out this testimony of Mr. Dickenson are not given in the record, nor are any objections to them noted, and we must therefore assume they were correct. After testimony is given to the jury in a cause on trial in answer to questions which are not objected to, we know of no method of taking it from the consideration of the jury, except by a motion to strike the testimony, or by request for an instruction that it be disregarded by the jury. 8 Ency. Pl. & Pr., 246, 247, and authorities cited *supra*. We do not think these assignments are sustained.

The only other assignment of error which is argued is based on the ruling of the court denying a motion for a

new trial. There are nominally three grounds stated in the motion, *viz*: First, that the verdict is contrary to law; second, contrary to the charge of the court; third, contrary to the law governing the evidence. The argument for the plaintiffs in error on this assignment is addressed to the proposition that the jury in considering the evidence did not properly apply the law given them in the charge by the trial judge to the evidence, and especially did not give the defendants the benefit of a reasonable doubt of their guilt arising from the evidence. The contention is that inasmuch as the State relied principally upon the testimony of an accomplice, Isham Edwards, who admitted upon the witness stand that he had made statements in conflict with the evidence which he then gave, that the jury should have given the defendants the benefit of a reasonable doubt and acquitted them and especially that Caldwell should have been acquitted as he adduced proof tending to show an alibi.

Isham Edwards' testimony is given in narrative form in the record and is as follows: "The witness here stated in minute detail the people he met on the road, where and when he put up his horse (it appears from other testimony that he had been to Tallahassee) when and where he met Caldwell after dark, where they were when Eppes passed (Eppes had also been to Tallahassee and was returning home) and about their talking about killing Eppes before the buggy came by. I did make the statements referred to by Mr. Langston, Mr. Courtney and Mr. Dickenson. The first statement I told Mr. Langston and Mr. Courtney is true. We were all three together, and George Caldwell did the shooting, and I spent that night with Nelson Larkin, and in the morning a person of the name of.....................came there and waked us

up.  I did make the statements that Mr. Jones referred
to, but the reason I made the statement to Mr. Jones
different from the one I made to Mr. Courtney and Mr.
Langston was because I was put up to it by a negro in
jail by the name of Bill Alford who was always bullying
me and said if I did not get those other parties out that
a crowd would come in the jail  and take me out  and
hang me.  But the first statement that I made which was
to Mr. Langston and Mr. Courtney was true.  The shoes
here in the court are mine.  I did make the statement that
George Caldwell wanted to borrow my shoes the evening
Mr. Eppes was killed to go to see his cousin.  After the
shooting was done I ran one way just like Mr. Gibbs said,
and the other two ran another way.  I did not know where
they went, but we afterwards met at Larkins' store, and
I spent the night with Larkins.  We were all three pres-
ent at the time Mr. Eppes was killed, and Caldwell went
ahead of us about the length of this room and shot Mr.
Eppes.  The horse did not run away.  As soon as the
gun fired I got scared and ran and I do not know whether
any body went to the buggy or not.  I did not know if Mr.
Eppes fell out of the buggy or not."  The statement which
Isham Edwards refers to as having been made by Mr.
Courtney was as follows:  "Well, you have got me and
I might as well tell the straight of it.  Me and George
Caldwell and Nelson Larkin were all at Nelson Larkins'
store, and George Caldwell said "Here comes Mr. Eppes
now boys."  Mr. Eppes' buggy passed by and we waited
a little while and all three of us went down the road,
caught up with the buggy, and when we were all about
a half car's length from the buggy George Caldwell took
the gun and went up close to the buggy and shot Mr.
Eppes.  We were all three together."  Mr. Langston tes-

tified to the same statement. The statement which Isham Edwards made at a different time to Mr. Dickenson on the train going to Jacksonville in the presence of Caldwell and Larkins, the three being under arrest, as given in Mr. Dickenson's testimony, was of similar import.

On cross-examination Isham Edwards admitted having given statements in regard to the killing of Mr. Eppes to Mr. Jones and others, different from the one he gave on the stand, and said in explanation "This same Bill Alford said he was going to beat me if I did not make this last statement, and I was afraid he would beat me." It appears from the testimony that Mr. Eppes was shot and killed in his buggy on the Bradfordville road, and according to the evidence of Isham Edwards the only witness who testified to seeing the murder—a little north of Larkins' store on September 3rd, 1904. We can infer from the evidence that it was sometime after dark on the evening of that day. There is nothing in the testimony from which we can fix with anything like exactness the time when he was shot. A pool of blood was found in the road, and the tracks of three men near this spot. One was the track of Isham Edwards and the other two tracks are not identified. They went north from where the pool of blood was discovered. An empty twelve gauge shell was found near this spot. The witness Courtney went to Larkins' store and asked if he had a gun. He said he had one but did not know whether it was there or not. Courtney told him, he Courtney must have the gun. Larkins reached under the counter and pulled out a gun, a twelve gauge double barrelled shot gun. The shell found in the road had a peculiar indentation on it, and upon examination it was found that the rebounding

spring of the right lock of this gun was damaged and the hammer pressed against the plunger and produced an indentation exactly similar to the one on the shell which was found. In Edwards' house two other shells were found loaded with No. 7 shot, one of which had a similar indentation on it. The jury were shown how this indentation was produced, by the witness taking a fresh shell and putting it into the gun. Mr. Eppes was shot with No. 7 shot.

Robert Robinson testified that on Saturday afternoon September 3rd, 1904, he sold Isham Edwards three twelve guage shells loaded with No. 7 shot. Caldwell lived about two and a half miles north of Larkins' store. He was arrested by Deputy Sheriff Langston late on the night after Mr. Eppes was killed, near a church which was near Larkins' store. Langston saw him jumping across the road in his shirt sleeves. Caldwell said he had been to church. Larkins told Mr. Whitehead, a witness, early Sunday morning, September 4th, 1904, that he locked up his store at half past seven o'clock, and started away, and that he heard a gun fire and that the gun was a muzzle loading gun because he heard the cap snap and then the gun shoot. He supposed it was the shot that killed Mr. Eppes. Mr. Eppes was shot in the head with No. 7 shot at close range. He is supposed to have been shot where the pool of blood was found, between the seven and eight mile post from Tallahassee. George Caldwell introduced several witnesses to prove an alibi. Mack Davis testified that he left Tallahassee at early sundown and passed Caldwell and last saw him going up Vason's hill, three miles from town. This was about sundown, and the place was about four and a half miles from Larkins' store. He saw Isham Edwards standing by the road near the church which is about one-quarter

of a mile from Larkins' store and three-quarters of a mile from where Mr. Eppes was supposed to have been shot. Isham had a gun. Witness went on past Larkins' store, and went about three-fourths of a mile and heard the gun shoot, and that George Caldwell did not have time to get to where Mr. Eppes was killed. The witness said he and Nat Hunter had left Caldwell four and a half miles back just before dark at a well. He had previously said that the last time he saw George Caldwell was at the Vason hill about sundown. Nat Hunter testified that he and Mack Davis left Tallahassee after sundown in their bug-gies. They stopped at the Hare place to water their horses, and George Caldwell drove up in a wagon with Jennie Karney. The last he saw of the wagon it was going up the Vason hill three miles from town. When he and Mack Davis passed Larkins' store there was a light burning in the store. He also saw Isham Edwards standing by the road with a gun in his hand and heard a gun fire in that direction. They passed Mr. Eppes before they got to the place where Isham was standing.

Jennie Karney testified that when she left Tallahassee the day Mr. Eppes was killed it was nearly dark. She took George Caldwell in the wagon with her, and when they got a mile from town came to Mack Davis and Nat Turner (Hunter) watering their horses at a well. They drove on and left George and witness at the well. She lives five miles from Tallahassee with Mr. Craig's people. George Caldwell rode with her until she came to the road turning off from the main road to her house. It was night when Caldwell left her.

Mamie Chaires testified that on the day Mr. Eppes was killed she met Isham Edwards with a gun as she was go-ing to Larkins' store. She reached Larkin's store about

five o'clock and he was there. She staid until ten o'clock. She was waiting to buy some lard that was coming on Larkins' wagon from town. Larkins shut up his store at ten o'clock and went home with her. She was in Larkins' store when Isham brought back the gun, which was about half past seven o'clock. George Caldwell came to Larkins' store about a half an hour after Isham brought the gun. It is evident that this story as to the time Larkins closed his store does not agree with Larkins statement to Mr. Edward Whitehead, *viz*: that he closed his store about half past seven o'clock. George Caldwell testified in his own behalf. He stated that it was nearly dark when he left town; that he rode with Jennie Karney until he got to the Craig place about five miles from town; that when he left her it was after dark; that he stopped and talked a little while with some kin people living on the road, and then went home going by Larkins' store which was in the direction of his home. When he reached Larkins' store it was a good while after dark; that he was in Larkins' store about a half an hour when Isham Edwards came in with Larkins' gun, and unbreached it and took out two loaded shells and gave the gun to Larkins. Shortly afterwards he left and did not see Isham until after he was arrested; that he did not see Mr. Eppes in the road and did not have anything to do with killing him, and that he was an innocent man. It will be observed that Caldwell did not explain how it happened that he was arrested near Larkins' store very late that night by the deputy sheriff.

It is evident also that his statement like that of Mamie Chaires as to the time of closing the store does not agree with Larkins' statement to Mr. Whitehead. Larkins stated to Mr. Whitehead that he closed his store about half past seven o'clock and soon after heard the shot that

it was claimed killed Mr. Eppes. Mamie Chaires was at the store from five o'clock until ten o'clock, when she says it was closed, and says nothing about hearing the shot fired.

In view of the fact that no witness fixes the time when Mr. Eppes was killed, except that it was after dark, it is evident that the evidence of an alibi was not of that character which must necessarily have produced a reasonable doubt of the presence of Caldwell at the killing of Eppes. The shot which some of the witnesses say they heard may or may not have been the one that killed Eppes, and as to this shot, the time when it was heard is not fixed with anything like precision. If Caldwell was at Vason's hill at sundown, about half past six o'clock, four and a half miles from Larkins' store, it is consistent with reason that he might have walked the intervening distance and have been at Larkins' store with Larkins and Isham Edwards just as Edwards testified he was; that is to say sometime after dark. This court held in Bacon v. State, 22 Fla. 51, and in Adams v. State, 28 Fla. 511, text 541, 10 South. Rep. 106, that to make the defense of an alibi available the evidence of its existence must cover the whole time when the presence of the defendant was required, and that it is sufficient if it raises a reasonable doubt in the minds of the jury whether or not the accused was present at the killing. See, also, Murphy v. State, 31 Fla. 166, 12 South. Rep. 453. The jury, however, are the judges of the credibility of the witnesses and of the weight and sufficiency of the evidence, and in view of all the evidence we are not able to say that they erred in not sustaining this plea and acquitting the defendants. As to the testimony of Isham Edwards who according to his own statement was an accomplice in the crime of killing Mr. Eppes, the law in this State is settled that such

testimony is competent, and that if it satisfies the jury of the defendants guilt beyond a reasonable doubt, a conviction thereon may be had, though it be uncorroborated. Brown v. State, 42 Fla. 184, 27 South. Rep. 869; Bacon v. State, 22 Fla. 51; Tuberson v. State, 26 Fla. 472, 7 South. Rep. 858.

Where there is evidence to support a verdict and its propriety depends on the credibility of witness the appellate court can not interfere. McNish v. State, 45 Fla. 83, 36 South. Rep. 176.

The judgments and sentences of the trial court are affirmed.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ. concur in the opinion.