BEN THOMPSON, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

If a question is propounded to a witness which tends to elicit improper testimony it is the duty of the opposite party to object to it and obtain a ruling on his objection. If improper testimony is given in response to a proper question the proper method of removing it from the consideration of the jury is a motion to strike it. If improper testimony is given in response to an improper question to which no objection is made, a motion to strike is the recognized mode of removing it, but in such a case, the granting or refusing the motion is in the sound discretion of the trial court, and on appeal an abuse of such discretion must be shown.

This case was decided by Division B.

Writ of Error to the Criminal Court of Record in Escambia County.

The facts in the case are stated in the opinion of the court.

*Geo. W. Parker,* for Plaintiff in error;

*W. H. Ellis,* Attorney General, for the state.

HOCKER, J.—An information was filed against Ben Thompson, the plaintiff in error, in the criminal court of record of Escambia county charging him with wilfully and maliciously setting fire to and burning a barn, the property of W. C. Barrineau in that county, on the 2nd of February, 1908. The case was tried in March, 1908, and defendant was convicted and sentenced to imprisonment in the state prison, which sentence he seeks to reverse here on writ of error.

The second, third and fourth assignments of error are as follows, *viz:*

"(2). The court below erred in overruling the plain-
tiff's in error objection to the admission of the testimony
of Mr. W. C. Barrineau, to-wit: I missed some other
things that same night, a rain coat and a lantern from my
front gallery, which I have never seen since.

"(3). The court below erred in admitting the testi-
mony of Mr. W. C. Barrineau, as follows, to-wit: I
sold the defendant a suit of clothes with the understand-
ing that the title was to remain in me until the clothes
were paid for, and the defendant had them in the house
where he was staying and he carried these away with
him the same night.

"(4). The court below erred in admitting the testi-
mony of Mr. Zack Emfinger, as follows: 'I saw the
defendant and Rollin Bailey about ten o'clock on the
night of February the 2nd, this year, and bought this
coat that I have on from the defendant for ($1) dollar;
he had a storm lantern with him that he wanted to sell
me at the same time. Bailey had a rain coat that he
offered to sell me."

The testimony as contained in the record is in nar-
rative form and we deem it best, in passing on the as-
signments of error to give its substance.

W. C. Barrineau testified that he lived near Molino,
in Escambia county, and was engaged in the naval stores
business and farming; that he knew the defendant, Ben
Thompson; had the latter in his employment prior to
the time his barn was burned on the 2nd of February,
1908; that he had defendant in the woods with him
and he would not work very well so told him he could
come in and work on the farm, if he would work as he
ought to do, and that he could eat in the kitchen and
live in a house in the back yard which he did, and
things went all right for a while. While witness was
away from home Ben gave the wife of the witness some
saucy words, and witness told him about, gave him a whip-

ping and told him to leave the place; but Ben said he did not want to go but wanted to stay, which witness told told him he might do if he would work and behave himself; that witness would see he had some money each pay day; that Ben made a better servant after witness whipped him; that on the 2nd of February of 1908, the defendant and another boy who was at work for witness fed the cows in the barn as they did each evening, and afterwards had their supper and went out to the house in which they stayed at night, and witness called them out and gave them a lantern and ordered them to go and feed another cow in the barn; that they took the bucket and went out that way and witness never saw them any more that night; that about a half hour after they had gone witness discovered the barn on fire in the top; that there were sixteen cows in the barn and witness got them all out except four; that he missed some other things that same night, a rain coat and a lantern, from the front gallery, which witness has never seen since— a storm lantern with a covered protector.

The record shows that counsel for defendant here objected to the admission of the testimony as to the coat and lantern upon the ground that it was immaterial, irrelevant and an attack on defendant's character calculated to prejudice the jury. The objection was overruled and the defendant excepted. The witness then proceeds to say that he had sold the defendant a suit of clothes upon the understanding that the title was to remain in witness until the clothes were paid for, and that defendant carried them away with them the same night, and that witness recognizes the coat Zack Infinger, one of the witnesses, is wearing as the coat to the suit.

Counsel for defendant objected to this testimony on the same grounds as before stated, which objection was overruled, and the defendant excepted. The witness then states he did not know that defendant and Rollin

Bailey had any intention of leaving his place that night; that they never gave him any notice, and he never heard of them again until they were arrested by the deputy sheriff near Pine Barren, going north; that witness never saw them after he sent them out to feed the cows; that the barn was his property and was burned to the ground; that there was no way for the barn to catch fire accidentally—no fire place or stove, and no lamps ever carried in there—a lantern was always used at night—the top of the barn was filled with hay and a match would set the whole thing ablaze.

J. R. Stewart testified that he knew Ben Thompson; both were employed by Mr. Barrineau in this county. Also knew Rollin Bailey, another boy who worked for Mr. Barrineau; that he and they lived in a house in the back yard of Mr. Barrineau's house—they in one side and he in the other. Witness saw them on February 2nd, 1908; they came into their side about dark and Rollin asked witness for a match. Witness gave him some matches through a hole in the wall, and they made a fire. Afterwards they went to their supper and witness never saw them any more. After that he saw Mr. Barrineau's barn on fire in the top; that it was not unusual for them to ask for matches.

Cicero Grimes testified that he worked for Mr. Barrineau; that he knew defendant and knew of Mr. Barrineau's whipping him; that he heard him say one night in the quarters about a week before the barn was burned he did not have to stay with Mr. Barrineau all the time and would get even with him. Will Lee testified to about the same effect as Grimes.

Zack Emfinger testified that he lived at Molino, was night watchman at the brick yard; that he saw defendant and Rollin Bailey about ten o'clock on the night of February 2nd, 1908, and bought the coat he had on from defendant for one dollar, which he considered a bar-

gain; that defendant had a storm lantern with him that he wanted to sell at the same time, and that Bailey had a rain coat that he wanted to sell. Here the record shows the defendant's counsel objected to the admission of this testimony on practically the same ground as he made to former testimony, which objection was overruled.

It does not appear from this record any objections were made to any question propounded by the state to any one of its witnesses. The objections all appear to have been after the witnesses had testified. If questions were propounded which tended to elicit improper testimony it was the duty of the defendant to object to them, and obtain rulings on his objections. If improper testimony is given in response to a proper question, the proper method of removing it from the consideration of the jury is by a motion to strike it. If improper testimony is given in response to an improper question to which no objection was made, a motion to strike is the recognized method of procedure; but in such a case it seems to be general law the party moving is not entitled as of right to have it stricken out on motion. The granting or refusing such a motion is in the sound discretion of the court, and on appeal an abuse of such discretion must be shown. 22 Ency. Pl. & Pr. 1310-1315. This court in a large number of cases has in a general way approved these views. See Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., 27 Fla. 1, text 105, 9 South. Rep. 661; Ortiz v. State, 30 Fla. 256, 11 South. Rep. 611; Bishop v. Taylor, 41 Fla. 77, 25 South. Rep. 287; Schley v. State, 48 Fla. 53 text 57, 37 South. Rep. 518; Lewis v. State, 55 Fla. 54, 45 South. Rep. 998; Skinner v. Manuf'g Co. v. Douville, 54 Fla. 251, 44 South. Rep. 1014; Caldwell & Larkin v. State, 50 Fla. 4, 39 South. Rep. 188.

In the case of Platt v. Rowand, 54 Fla. 237, 45 South.

Rep. 32, this court said: "Where no objections are interposed to questions propounded to a witness and his testimony is admitted without objection the party so failing to object is not entitled as a matter of right to have the responsive testimony of the witness stricken out on motion, even though it be irrelevant or incompetent, and open to attack by proper grounds of objection." Applying these principles to the facts of this case where there does not appear to have been any objection to the questions which elicited the testimony which is challenged as improper, but which undoubtedly bears upon the motives of the accused, and no motion made to strike the same, but apparently objections were interposed to it only after it had been admitted, we feel constrained to adhere to the rules heretofore followed. We find no reversible error under these assignments.

The first assignment is based on the action of the court overruling the motion for a new trial. Under this assignment it is contended that the verdict is not sustained by the evidence. We have carefully considered the evidence and do not feel warranted in saying that it is not sufficient to sustain the verdict.

The judgment of the court below is affirmed.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.