T. JOHNSON v. STATE.

172 So. 708.

Division B.

Opinion Filed February 13, 1937.

*Fullerton & Duss,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* and *James B. Watson,* Assistant Attorneys General, for the State.

PER CURIAM.—The information herein charged T. Johnston with receiving and aiding, on March 6, 1936, in the concealment of "five boxes of oranges of the value of $10.00 and 1½ boxes of grapefruit of the value of $2.25, the property, goods and chattels of J. J. Parish and C. W. Carlile," well knowing that said oranges and grapefruit had been "feloniously and unlawfully stolen, taken and carried away."

Trial was had on a plea of not guilty, resulting in a verdict of "guilty of receiving stolen property· knowing the same to have. been stolen as charged in the information."

Motion for new trial was denied.

The court then adjudged defendant guilty of having received stolen property knowing the same to have been stolen and sentenced him to two years at hard labor in the State Penitentiary at Raiford.

From the judgment of conviction and sentence, the defendant took writ of error.

It appears from the transcript of record that the defendant, T. Johnston, operated a filling station about one mile north of Titusville on the Dixie Highway, where he sold, in addition to gasoline and oil, among other things, oranges and grapefruit.

The State introduced evidence to show that defendant had planned with Roscoe Osteen and Earl Hickman for them to get him some fruit from the Carlile and Parrish grove, which fruit the defendant was to purchase from them; that on March 6, 1936, Roscoe Osteen and Earl Hickman went to the Carlile and Parrish grove in the daytime, picked the fruit and hid it under some palmetto leaves, where it remained until they went back that night with Johnston, in the latter's car, and got it.

The defense introduced evidence to prove as an alibi that defendant, on the night of March 6, 1936, at the time when he was said to have been with Roscoe. Osteen and Earl Hickman getting the fruit, was visiting with Gilliams and Bandys on Merrit's Island, about seven miles distant from his place of business, in company with his wife and daughter and Delbert Steele, a brother-in-law.

The first question presented is whether there was sufficient evidence upon which the jury could have found that the defendant, as charged in the information, bought the property knowing that it had been feloniously and unlawfully stolen, taken and carried away.

It is essential to a conviction for receiving stolen property that the evidence shall show to the exclusion of a reasonable doubt that the accused had knowledge that the property in question was stolen at the time he received it, or that the circumstances of the transaction were sufficiently suspicious to put a person of ordinary intelligence and caution upon inquiry. Minor v. State, 55 Fla. 90, 45 So. 818; Franklin v. State, 66 Fla. 213, 63 So. 418; Worster v. State, 82 Fla. 463, 90 So. 188; Knowles v. State, 86 Fla. 270, 97 So. 716; Winton v. State, 87 Fla. 104, 99 So. 249; Hart v. State, 92 Fla. 809, 110 So. 253; Williams v. State, 106 Fla. 225, 143 So. 157.

Roscoe Osteen and Earl Hickman, State witnesses, testified that they went to the defendant's filling station about eight o'clock on the morning of March 6, 1936; that defendant told them that he wanted them to get him some fruit, five boxes of oranges and 1½ boxes of grapefruit, and gave them some crocus sacks and gave Roscoe Osteen a knife to use in cutting the fruit from the trees. Defendant told them to get the fruit in the daytime, as they would be less likely to be caught, because the grove was being watched at night. About nine or ten o'clock that morning, Roscoe Osteen and Earl Hickman went to the Carlile and Parrish grove and picked the fruit, after which they hid it under some palmetto leaves just outside the grove next to the sand road. They then went back and told defendant what they had done, and he said that he would go for the fruit about dusk, around six o'clock. That same night about dusk or around six o'clock the defendant, Roscoe Osteen and Earl Hickman, drove, in the defendant's car, to the spot where the fruit was hidden. Defendant did the driving and drove most of the way, after leaving the highway, with his lights out, turning them on only to

avoid mud puddles, and kept the lights off entirely when he stopped to load the fruit in the car. After the fruit was loaded in the car, they drove with the lights out most of the way until the car reached the highway, when they were turned on again. The fruit was unloaded at the defendant's filling station. Defendant paid them 75 cents per box for the oranges and 60 cents per box for the grapefruit, one of the boys receiving credit on an account he owed defendant for part of his payment for the fruit and the other boy receiving cash for his payment, part of it being paid that night and part being paid the following day. Two other loads of fruit were stolen for defendant and delivered to him in the car of Mr. Ed Osteen; but on the fourth attempt the boys, together with another boy, Levy Vickers, were caught and arrested. Roscoe Osteen testified that the defendant told him to steal the fruit, and that the defendant knew it was stolen or he wouldn't have waited until dusk to go for it. Earl Hickman testified that defendant knew the fruit was stolen because of the way he acted when going after it, by cutting off his lights while going down the sand road, and keeping them off while loading the fruit in the car.

There was testimony introduced by the defense designed to rebut this showing of guilt made by the State. Under the circumstances as testified to by the State witnesses, it might reasonably be inferred that the defendant knew at the time the fruit was being placed in his car that it was stolen. We find that the conclusion of the jury that the defandant was guilty, which implied that he knew that the fruit was stolen at the time he received it, was amply supported by the testimony of the State witnesses, and will not be disturbed.

It is contended in the second question presented that the court erred in striking the following answer of Mrs. Hassie

Johnston, wife of the defendant; "it was the seventh or eighth, I am not sure," which answer was given in reply to a question propounded by counsel for defendant, as to when defendant and his wife bought some fruit from Mr. Ed Osteen.

The following proceedings took place after Mr. Boyle made a motion to strike the above quoted answer of Mrs. Hassie Johnston:

"MR. FULLERTON: We are charged here with having bought some fruit, and we admit it—but we are charged with having bought some fruit from this boy on a certain date, we admit we bought some fruit at the same price but at some other period of time.

"THE COURT: What connection would there be between that and the charge?

"MR. FULLERTON: It would have nothing to do with this particular case possibly except we admit we purchased fruit at a different time from different parties but the same price.

"THE COURT: It would be wholly immaterial unless you undertake to connect it along with the fruit or at the time alleged. A charge of buying and receiving specific fruit it would be no defense to show that you bought other fruit. The motion to strike is granted. Exception noted for the defendant."

It would be no defense to an accusation of purchasing stolen fruit from one man, at a certain price, on the sixth day of the month, to say that defendant purchased some fruit, without identifying it as the same fruit, from another man, at the same price, on the seventh or eighth day of the month. Such testimony had no material bearing on the charge against the defendant, and if true, would not have explained or have made any defense to the purchase of

stolen fruit, unless it had been connected in some way so as to show that it was the same fruit alleged to have been stolen and purchased by defendant on the sixth day of the month. However, this same witness was later permitted to testify as to the same matter in another way; and such later testimony rendered harmless the striking of the answer referred to above, even if the striking of that answer was error.

The third question presented is whether or not the testimony of the defense witnesses regarding the alibi of the defendant was sufficient to have raised, in the minds of the jurors, a reasonable doubt as to whether the accused was present at the time when and the place where the stolen fruit was alleged to have been received by the defendant.

The State witnesses, Roscoe Osteen and Earl Hickman, testified that the defendant was present about dusk, on the night of March 6, 1936, at the place where the stolen fruit was hidden, and the stolen fruit was then placed in defendant's car at that place. The defense witnesses testified that at that particular time on that date, the defendant, in company with his wife, daughter and brother-in-law was visiting the Gilliams and the Bandys on Merrit's Island.

The defense of an alibi is sufficient to acquit the defendant if it raises a reasonable doubt in the minds of the jury as to whether or not the defendant was present when the crime was committed. Murphy v. State, 31 Fla. 166, 12 So. 453; Caldwell v. State, 50 Fla. 4, 39 So. 188. In the instant case the court gave the jury an instruction to that effect.

But when the proof of an alibi depends upon the credibility of the witnesses and the weight of the evidence, the jury are the sole judges as to whether the evidence raises such reasonable doubt. Caldwell v. State, 50 Fla. 4, 39

So. 188. The jury in the instant case weighed the conflicting evidence as to the defense of. alibi and found against the defendant on that issue; and this court will not disturb that finding.

The fourth question raised by plaintiff in error was expressly abandoned by him in his brief, consequently that question was not considered by this Court.

No error of law or procedure having been made to appear, the judgment of conviction and sentence is hereby affirmed.

Affirmed.

WHITFIELD, P. J., and BROWN, and DAVIS, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.