D. A. Minor, *Plaintiff in Error*, v. The State of Florida, *Defendant in Error*.

1. It is essential to a conviction for receiving stolen property that the receiver shall have knowledge that the property was stolen at the time of its reception, or of such circumstances as would put a man of ordinary intelligence and caution on inquiry.

2. The fact that the alleged receiver of stolen goods purchased them at a price much below their value, is not of itself and alone sufficient to sustain a conviction.

3. The evidence in the case examined and found insufficient to sustain a conviction.

This case was decided by Division B.

Writ of Error to the Criminal Court of Record for Duval County.

## Statement.

At the April term of the criminal court of record for Duval county an information was filed against D. A. Minor, the plaintiff in error, Howard C. Jones and Bryant Nichols, containing two counts. The first count charged them with the larceny of $85.00 worth of cigars, the property of the Southern Railway Company, and the second count charged them with having, receiving, buying and aiding in the concealment of the same property, well knowing that the said property had before been stolen, etc. Howard C. Jones pleaded guilty to the second count of the information, and Minor and Nichols were tried and convicted on the second count. They were sentenced to the state prison, and Minor seeks a reversal on writ of error. The following is the substance of the evidence as to Minor.

E. B. Huff, a witness for the state, testified that on, the 12th of February, 1907, he was warehouse and terminal foreman of the Southern Railway in Duval county, the warehouse being located on East Bay street (Jacksonville), and had charge of receiving and loading freights. There were four clerks and from twelve to twenty colored laborers; that on that day they received a case of cigars from the Van Deman Company for shipment to the Cash Grocery Company at Hazlehurst, Georgia, but in order to load for Hazlehurst on that day they would have had to break a car to Jesup, which they didn't want to do, so waited for a car to load through, took the case of cigars and put them on the scales in the center of the warehouse where they could be gotten next morning. The cigars were there next morning. They were missing that evening at 4 o'clock when he went to get them. He reported to the agent that the case of cigars had been stolen.

J. E. Burns, a witness for the state, testified that he was in the cigar department of the C. B. VanDeman Company of Jacksonville. He packed and checked cigars. On the 11th of February, 1907, 'a case of cigars was packed, marked Hazlehurst Cash Grocery Company, Hazlehurst, Ga., and sent on the 12th of February to the warehouse. The case contained 5,000 cigars, originally billed at $17.50 per thousand—value $87.50. The cigar is called the El Sorento. The Van-Deman Company were the exclusive agents for handling said cigars in Florida and Southern Georgia. Saw the same or similar cigars at the Clyde Line Dock on or about the 16th or 17th of March, 1907, being shipped to some address in Charleston; that no one else handles these cigars in Jacksonville except two or three customers who buy from one to three hundred, never over a thousand. He didn't count the cigars he saw at the Clyde Line, but would say there were about 4,000—the

same cigars the VanDeman Company handled. Upon examination of the cigars in court the witness said they were part of the same cigars alleged to have been stolen. He identified the cigars by some small sample boxes found in the case at the Clyde Line Dock.

Tom Young, a state witness, testified that he worked for Minor; that by Minor's direction he packed the cigars in the case which was in court. They were in Minor's pantry at his house. After the cigars were packed he gave them to a drayman at the house. They were to be shipped to Charleston.

J. C. Crawford, a state witness, testified he was a policeman. He found six boxes of goods at the Clyde Line. Among them the box in court addressed to a firm in Charleston. The cigars in the box were of the El Sorento brand. He found that they came from South Jacksonville, where he ascertained from Berry they were Minor's goods. He then went to Minor who said the cigars were his; that he had bought and paid for them, and that if the witness would not arrest him he would tell all about it. This occurred on the 3rd floor of the J. D. Horn Company's dry goods store, of which Minor was manager. The box contained silks and other goods, cigars and tobacco. The box was found by him at the Catherine Street Clyde Line dock. Minor was at the police station when he pointed out the specific boxes and said they were his. The witness was not positive about the date of this conversation, but thought it was about the 14th or 15th of March.

Frank Jones, a witness for the state, corroborated Crawford as to the arrest of Minor and the conversation with him.

Howard C. Jones, a witness for the state, testified he had seen the cigars which were in court before—saw them at Bryant Nichols' on Eagle and Louisiana streets, in Jacksonville; they were loose—not in the original

case.   Nichols told him he had some cigars to sell and witness went out and saw them—about 5,000.   Nichols gave witness a sample box, said he wanted $7.00 a thousand for them.   Then the witness saw Minor & Co. (Carl Minor and defendant, D. A. Minor) who were going into business at Dixieland Park, and offered the cigars (about 5,000) for $10 per thousand.   Minor said he would give $50 for them and witness went back and paid Nichols $35 for them, and he was to deliver them. The witness at that time had been working for Horn, but had quit a week or ten days before.   Nichols said he got the cigars from some negroes who got them from the railroad.   Nichols was to deliver the cigars, and that is all the witness knows of the transaction.   D. A. Minor was at the time working for the J. D. Horn Co.   Witness did not give Minor any information that the cigars were stolen; knew that he was expecting to open a business at Dixieland Park; directed Nichols to deliver the cigars at Minor's house, 1919 Main street; does not know whether he delivered them; Minor was at Horn's when witness saw him about selling him the cigars; Minor and witness had both had business dealings with Nichols before, but witness does not think Minor knew very much about Nichols; the sale was made to Minor at the Falstaff Saloon; witness telephoned him to go there; Minor told witness to send the cigars to his house; a few days after this sale witness made other sales of cigars to Minor from Nichols; Dixieland Park had not then been opened; Minor was going to open there a retail refreshment, cigar and soda water business.

Ed Haws, a state witness, testified that on a Saturday night about six o'clock he was directed by Minor to go to Nichols' and get two barrels of cigars and take them to Minor's house, which he did.

T. D. Gray, a witness for the state, testified that he had told Haws that day he would get his per diem as

other witnesses.  Did not promise him any more money. This was intended to corroborate Haws.

The defendants then introduced several witnesses in rebuttal of the testimony of Haws and H. C. Jones as to the cigars having been bought by Jones of Nichols, and of their having been delivered at Minor's house by Haws.

The state then introduced in rebuttal D. A. Minor, the plaintiff in error.  He testified that Carl Minor and himself were partners in a business at Dixieland Park. The firm name was Minor & Co.  Berry managed the business.  The cigars were bought for that business. Witness had a concession there for refreshments, cigars and restaurant privileges.  A card is shown the witness addressed to C. M. Weil & Co., Charleston, which he admitted he gave to Berry to ship some cigars.  The witness stated that he bought cigars which looked like those in court of Jones for $50.00. ' Stated that he bought other cigars, cigarettes and tobacco something like $200.00 worth.  Jones had left Horn & Co. when the first lot was bought, which was about the 10th of February, and the other lots somewhere about 12th and 13th of February, but not positive about the dates. Jones was supposed to be selling cigars and groceries on commission, but witness did not know for whom.  He knew Jones very well.  Jones had been working for Horn & Co.  Jones said he had cigars to sell and left a sample box with witness.  Witness knew the cigars were such as would retail for five and ten cents, and bought them.  Told Jones to send them to his (Minor's) house until the place at Dixieland Park was open, as he had no other place to keep them.  Other cigars he told Jones to send to Dixieland Park.  Witness did not keep the cigars at Dixieland Park because Berry told him he (Berry) had a lot of cigars he could not sell.  Told Berry to sell them here.  Berry tried to do so but failed, and that is the reason they were shipped.  Witness does

not remember that he knew Jones had been arrested when he shipped the cigars. He thinks he ordered the cigars shipped before Dixieland Park was opened, the cigars had not been in Dixieland Park a week before they were shipped. Some had been opened for sale, and could not sell them. This was the reason they were shipped. Witness went to Gus Muller about the 11th of March to find out what certain brands of cigars sold foi. C. N. Weil is a traveling salesman, a traveling cigar man. Thinks he works on commission. Had not shipped the cigars when he saw Muller. The shipment was marked dry goods, because it was a mixed shipment of cigars, tobacco and dry goods.

Frank Jones, a witness for the state, further testified that Minor was arrested the second day after Jones was arrested, the day the goods were found at the Clyde dock.

There was other testimony as to Nichols, but the foregoing is substantially all the record shows connecting Minor with the offense of which he was convicted.

*John E. Hartridge* and *F. W. Pope,* for plaintiff in error.

*W. H. Ellis,* Attorney General, for the state.

HOCKER, J., (*after stating the facts.*)—The first assignment of error which is discussed is based on the ruling of the court denying the motion for a new trial. One of the grounds of this motion is that the verdict is contrary to the evidence. It is urged here that this ground was well founded.

It is essential to a conviction for receiving stolen property that the receiver shall have knowledge that the property was stolen at the time of its reception, or of such circumstances as would put a man of ordinary in-

telligence and caution on inquiry. 24 Am. & Eng. Ency. Law (2nd ed.) 46, and note; Commonwealth v. Finn, 108 Mass. 466; Collins v. State, 33 Ala. 434; State v. Caveness, 78 N. C. 484; Harris v. State, 53 Fla. 37; 43 South. Rep. 311. Mere possession by the receiver of the stolen property is not alone sufficient to sustain a conviction of this offence. Regina v. Pratt, 4 F. & F. 315; Durant v. People, 13 Mich, 351; 24 Am. & Eng. Ency. Law ('2nd ed.) 51, and note. Nor will the fact alone that the receiver purchased the goods at a price much below their value sustain a conviction; but coupled with other incriminating facts it may do so. People v. Levison, 16 Cal. 98.

Applying these principles of law to the facts of the instant case we do not think the evidence is sufficient to sustain the verdict. The testimony of H. C. Jones shows that when he sold the cigars to Minor he did not inform him they were stolen, and that Minor knew but little of Nichols. No combination or arrangement between Jones, Minor and Nichols is shown whereby Jones or Nichols was to steal, and Minor was to receive. Anthony v. State, 44 Fla. 1, 32 South. Rep. 818. It is not shown that Minor knew that either Jones or Nichols was a person of suspicious character or thief, or that he had information which should have put him on inquiry, for the bare circumstance that he bought the cigars for something less than they were worth is not alone sufficient. No other acts of receiving stolen property by Minor are shown. Minor's evidence as a state witness, explaining his connection with the cigars, the purpose for which he bought them, and the reason why he shipped them, it seems to us, is on its face not so unreasonable as to show guilt, and his testimony in these regards was not contradicted or rebutted by any other testimony. He gives an explanation of why he sent the cigars to his own house rather than to Dixieland Park,

and this explanation, for all that appears from the record, was not unreasonable. The evidence as contained in the record may raise some suspicions of the guilt of Minor, but suspicions alone do not warrant a conviction. Says the court in State v. Goldman, 65 N. J. L. 394, text 398, 47 Atl. Rep. 641: "Suspicious circumstances it is true may be a part of the circumstances from which knowledge may be inferred; but the jury must be satisfied that these circumstances were of such a character, when taken in connection with the whole transaction, as to lead to the conclusion that the defendant knew that the goods were stolen."

It is unnecessary to notice the remaining assignments of error.

The judgment is reversed at the cost of the county of Duval.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.