H. O. HART, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

## Division A.

## Opinion Filed October 22, 1926.

1. A motion to quash an indictment and the order made on such motion is a part of the record proper.

2. A bill of exceptions serves only to preserve matters *in pais* happening at the trial.

3. Where a motion to quash an indictment is made and overruled and there is no assignment of error upon the order overruling the motion this court will not consider the sufficiency of the indictment further than to ascertain whether any fundamental error appears in it.

4. A necessary element of the offense of receiving stolen property knowing it to have been stolen is knowledge on the receiver's part at the time he receives the thing stolen that it was stolen, or of such facts as would put a man of ordinary intelligence and caution on inquiry.

5. Where a particular fact is an essential element in the commission of a crime such fact must be established in a prosecution where one is charged with the commission of such crime, otherwise a verdict of guilty will be set aside.

6. The defendant has no right to an affirmative charge of acquittal in a criminal prosecution.

A Writ of Error to the Circuit Court for Broward County; C. E. Chillingworth, Judge.

Judgment reversed.

*Farrington & Lockhart, Winters & Foskett* and *John T. G. Crawford,* for Plaintiff in Error.

*J. B. Johnson,* Attorney General, and *H. E. Carter,* Assistant, for the State.

ELLIS, J.—Upon an indictment charging him in two counts with grand larceny and receiving stolen property knowing it to have been stolen the plaintiff in error was convicted on the second count and acquitted on the first.

To the judgment he took a writ of error and assigned many errors.

The twenty-first assignment attacks the sufficiency of the evidence to support the verdict. That question was properly raised by a motion for a new trial which was overruled. The motion also contained as one of its grounds the alleged error of the court in overruling a motion to quash the indictment. There is no assignment directly upon that order, however.

As the motion to quash an indictment and the order upon it are parts of the record proper a bill of exceptions which serves only to preserve matters in pais happening at the trial is not necessary to preserve for review the order on the motion to quash. An assignment of error should be made directly upon the order if it is desired to have it reviewed. This necessarily follows from the often repeated decisions of this court that a motion to quash an indictment and the ruling thereon forms part of the record proper and is out of place in a bill of exceptions. See Raines v. State, 42 Fla. 141, 28 South. Rep. 57; Olds v. State, 44 Fla. 452, 33 South. Rep. 296; Johnson v. State, 51 Fla. 44, 40 South. Rep. 678; Bell v. State, 61 Fla. 6, 54 South. Rep. 799; Watkins v. State, 69 Fla. 355, 68 South. Rep. 176; Ward v. State, 83 Fla. 311, 91 South. Rep. 189.

The sufficiency of the indictment, therefore, as no fun-

damental error appears in it, will not be considered. Although the motion to quash is evidenced to this court by the record proper there is no assignment of error directly upon the order overruling it. As a matter of good pleading the indictment might have been clearer in its allegations to show the value or nature and character of the certificate alleged to have been stolen. In each count the thing alleged to have been stolen is described as a ''certificate of indebtedness'' of a certain value exceeding twenty dollars. Its number, date and face value are given and the fact that it was issued against a certain lot in Fort Lauderdale is also alleged. The purpose of its issue, under what authority and by whom are facts not alleged. An ''order or certificate'' is made by statute the subject of larceny but our reading of the statute leads us to the opinion that it must be in the nature of a ''valuable contract in force.'' It would seem that if the alleged certificate was in fact a mere memorandum, however formally made, but nevertheless of no contractual value and of no binding force upon person or property, it would not be the subject of larceny as a ''certificate or order.''

As the point is not properly presented we do not decide it.

The plaintiff in error was convicted upon the second count which charged him with receiving and aiding in the concealment of the ''certificate of indebtedness'' knowing it to ''have been before then feloniously stolen, taken and carried away.''

The evidence was wholly insufficient to sustain that charge.

In the first place, it appeared that the ''certificate'' was not negotiable by mere delivery, that it could be of no value to any person unless lawfully acquired and of no value as an obligation against the City of Fort Lauderdale. It seems to have been a certificate issued by the city reciting

that the amount assessed by the city authorities against a certain lot for improvements made by the city had not been paid; although so much is not clear from the evidence exhibited to this court.

It was, at best, but secondary evidence of the city's lien upon the lot or right to enforce the collection of a certain sum by judicial proceeding against the property described. The certificate had been signed by the proper authorities and left undelivered opposite its appropriate stub in a book prepared for that purpose. There had been neither sale nor delivery of it to any person.

The plaintiff in error was an accountant employed by the city to audit its books. Among other documents and papers the book of certificates, containing the one under consideration with others, was exhibited to him and he was allowed access to it during his work as an accountant. He was intrusted with the book of certificates. It was kept in the vault or safe in the city clerk's office to which the clerk and his son at all times had access.

The accused made a list of the certificates. It is not difficult to surmise why he did so. In checking the city's accounts the item of expenditures for certain improvements would necessarily appear against which the amounts claimed by the city to be due by special properties on account of such improvements was evidenced in part by such certificates.

Sometime after the work of the accountant terminated he was known to have been in possession of the certificate. He tried to obtain a loan from a bank in Miami, his home city, upon the certificate as security. When some question as to the regularity of its issue was raised he offered to take it to Fort Lauderdale and ascertain from the proper persons whether its issuance was irregular. He made no objection to the bank at Miami, through its officers, doing that. When he was informed that the validity of the

certificate in his hands was questioned by the city he promptly paid to the Miami bank the amount of money he had obtained from it on the certificate as collateral and gave to a Fort Lauderdale banker, to whom the certificate had been sent by the Miami bank, an order for its delivery to the president of the city council.

He explained that he obtained the certificate from the son of the city clerk, a young man, Steve Calder by name, deputy clerk to his father, H. V. Calder, who was then city clerk, both of whom also had access to the book of certificates.

The circumstances of the acquisition by him of the certificate while not commendatory was nevertheless frank. He said he acquired it on the night of October 31, 1922, about nine o'clock in a "poker" game at the "Post Card Shop" in Fort Lauderdale in which he, Steve Calder and three others participated. He said that Steve Calder produced the certificate and offered to bet it on his hand against that of the defendant. The bet was accepted; the defendant won and the certificate passed to him.

Some irrelevant interest seems to have been around at the trial as to the intricacies of the game, method of play and processes of reasoning in "playing a hand." In all of which the defendant appeared to have a knowledge of the game's technique and a nimbleness of wit beyond the comprehension of the persons directly concerned in his trial as well as his competitors in play.

Steve Calder and the other three men, or youths, whom the defendant said were in the game, denied the defendant's story although they all admitted that the four were together that night at the hour and place stated though each denied much knowledge of the game of poker. In which statement part at least of the defendant's story found support.

Aside from some other circumstances more or less irrelevant in character the record contains no further evidence in support of the second count of the indictment.

Assuming for the argument that the property was the subject of larceny or embezzlement; the latter offense proven would not have supported the charge made. If the defendant had access to the certificate he was not the sole custodian of it; both Steve Calder and his father had access to it. The father was the official custodian of it. If his son stole it and passed it in the poker game to the defendant there is lack of any evidence showing that the defendant knew it. The instrument was subject to sale by the treasurer of the city. Steve Calder was a deputy clerk, his father the clerk. The possession of the certificate by the deputy clerk and his offer to pass it to another in a game at cards in the presence of three other persons, reputable young men and friends of Mr. Calder and who had no interest in the proceeds of the certificate, we do not regard as a circumstance sufficient to appraise the defendant that it was stolen or to put him on inquiry as to Calder's right to it.

The only inquiry he could then have made would necessarily have been addressed to Calder whose answer would have been no more convincing than his act.

The defendant accepted the certificate openly in the presence of the others and accepted as true Calder's implied declaration as to his right to it. The defendant's subsequent conduct was consistent with his right to the ownership and possession of the certificate.

If the jury accepted the defendant's account of the transaction they must have believed that Steve Calder stole the certificate which could only have been justified by the testimony of Mr. Calder that it had not been sold to any one; but the defendant could not know the night he received it

that it had not been delivered to the treasurer and sold. The mere listing of it while auditing the books did not prevent its sale by the city at any time through proper channels.

A necessary ingredient of the offense of receiving stolen property knowing it to have been stolen is knowledge on the receiver's part at the time he receives the thing stolen that the property was stolen, or of such fact as would put a man of ordinary intelligence and caution on inquiry. See Franklin v. State, 66 Fla. 213, 63 South. Rep. 418; Minor v. State, 55 Fla. 90, 45 South. Rep. 818, Licata v. State, 81 Fla. 649, 88 South. Rep. 621; Worster v. State, 82 Fla. 463, 90 South. Rep. 188; Knowles v. State, 86 Fla. 270, 97 South. Rep. 716; Winton v. State, 87 Fla. 104, 99 South. Rep. 249.

When a particular fact is an essential element in the commission of a crime and in a prosecution for such a crime there is no evidence showing the essential fact and no evidence from which the existence of such essential fact may fairly be inferred a verdict of guilty of the crime of which such non-proven fact is an essential part may be set aside by an appellate court. See Franklin v. State, *supra*; Baker v. State, 54 Fla. 12, 44 South. Rep. 719; Chislom v. State, 74 Fla. 50, 76 South. Rep. 329; Fudge v. State, 75 Fla. 441, 78 South, Rep. 510.

The defendant has no right to an affirmative charge of acquittal but the motion for a new trial should have been granted. The denial of the motion was error for which it is considered that the judgment be and the same is hereby reversed.

BROWN, C. J., AND STRUM, J. concur;

WHITFIELD, P. J., AND TERRELL, J., concur in the opinion.

BUFORD, J., disqualified.