## VAN GORDER v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit. October 5, 1927.

No. 7804.

1. **Larceny 64(1)—Mere possession of stolen property does not show guilty knowledge or sustain presumption possessor was thief.**

Mere possession of stolen property is insufficient to sustain a finding that the possessor had guilty knowledge that property was stolen, much less the subsequent presumption that he was the thief.

2. **Larceny 64(1)—Mere possession of stolen goods raises no presumption of guilty knowledge or stealing by possessor, unless so recent that property could not have been transferred.**

The possession of stolen goods alone raises no presumption of guilty knowledge or of stealing by the possessor, unless it was so recent that ample time and opportunity may not have been given to transfer the stolen property from the thief to another between the date of the theft and that of the arrest or seizure.

3. **Post office 49(1)—Presumption was that accused did not steal post office box keys in his possession nor have guilty knowledge, and government had burden of proving guilt beyond reasonable doubt (18 USCA § 314).**

Where only evidence of accused's guilt of stealing post office box keys, in violation of 18 USCA § 314, was his possession of the keys 87 days after the alleged theft, presumption was that he was not guilty of the alleged theft, or of knowledge that the keys were stolen, and burden was on government to prove his guilt beyond reasonable doubt.

4. **Criminal law 552(3)—Circumstantial evidence to sustain conviction must exclude every reasonable hypothesis but that of accused's guilt.**

To sustain conviction of a crime on circumstantial evidence, it must be such as to exclude every reasonable hypothesis but that of guilt of the accused, and facts proved must all be consistent with his guilt only and inconsistent with his innocence.

5. **Post office 49(8)—Circumstantial evidence held not to establish accused's guilt of stealing post office box keys (18 USCA § 314).**

Circumstantial evidence held insufficient to exclude every other reasonable hypothesis than that accused was guilty of stealing post office box keys, in violation of 18 USCA § 314, and conviction was therefore not warranted.

6. **Criminal law 1030(1), 1044, 1048, 1129 (1)—In criminal case, federal appellate court may correct serious trial errors, though not challenged by objections, motions, exceptions, or assignments of error.**

In criminal case involving the life or liberty of accused, the federal appellate court may notice and correct, in the interest of a just and fair enforcement of the laws, serious errors in the trial of accused fatal to his rights, though such errors were not challenged or reserved by objections, motions, exceptions, or assignments of error.

In Error to the District Court of the United States for the Eastern District of Missouri.

Hayes Van Gorder was convicted of stealing two post office keys, and he brings error. Reversed and remanded.

Hayes Van Gorder, in pro. per.

Louis H. Breuer, U. S. Atty., of Rolla, Mo., and C. J. Stattler, Asst. U. S. Atty., of St. Louis, Mo.

Before SANBORN and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

WALTER H. SANBORN, Circuit Judge. The defendant below was convicted of stealing two post office keys suited and used to

open street post office boxes in Poplar Bluff, Mo., on the 17th day of January, 1924, in violation of title 18, section 314, U. S. C., which defines and denounces such an offense under penalties of a fine of not more than $500 and imprisonment for not more than 10 years. The sentence imposed upon the defendant was confinement in the penitentiary at Leavenworth, Kan., for five years and the payment of a fine of $100. He assigned many alleged errors in the trial of his case, one of which is that there was no evidence of his guilt sufficient to sustain a verdict against him.

The charge against him was that on or about the 17th day of January, 1924, he "feloniously did steal, take, and remove from the United States post office at the city of Poplar Bluff" two keys, which were properly described and alleged to have been the property of the United States. Mr. Whitworth testified that he had been the postmaster in Poplar Bluff since June 15, 1921; that the post office was entered through a rear window in the building during the night of January 17, 1924; that the screen had been torn off and the window raised; and that the two keys and some stamps were missing the next day. On cross-examination he testified that the two keys were used by the city carriers for opening the street letter boxes; that he had four letter carriers who had access to the keys and to other similar keys; that these keys were kept in the register division and put out to them mornings by the man in the money order department; that he had several sets of these keys, and that they would unlock any of the street letter boxes in Poplar Bluff; that these keys were supposed to be kept during the night after the last collection of mail in the vault in the money order side; that one of these keys was not kept there on the night of January 17, 1924; that he did not know of his own knowledge whether or not any one entered the building at all; that he drew that conclusion from the fact that there was some property missing. On cross-examination by the court he testified that he knew the defendant, that he was not connected with the post office at Poplar Bluff in any capacity while he had been postmaster; that it had been three or four years before he became postmaster in June, 1921, since the defendant had worked in that post office; and that he had not seen him in Poplar Bluff just prior to January 17, 1924.

Clarence Connell testified that he was a substitute letter carrier in the city of Poplar Bluff on January 17, 1924; that he was in temporary charge of the keys for opening the letter boxes on that day and had one of the two keys alleged to have been stolen; that the keys were delivered to him by the clerk in the money order department; that he carried them with him throughout that day, and when he was through he deposited them on a table about a foot wide on the top of the dutch door leading to the money order department; and that he has never seen them since. He further testified that he deposited these keys on the dutch door at about 6:10 p. m. of the evening of January 17, 1924; that there was no one in the money order department then; that the money order window was closed at 6 o'clock; that there were two other post office employees at the post office when he left at 6:10 p. m.; and that during the night there were two clerks on duty at different times. He further testified that it was the duty of the clerk in the money order department to put the keys which he left on the dutch door in the vault in the money order department and that they were not in that vault that night. Kieth Gray, the postmaster at Postville, Iowa, and J. F. Nicholson testified that they arrested the defendant at Postville on April 15, 1924, and found the two keys he was charged with stealing among his personal effects. B. F. Kain testified that the defendant was a letter carrier at Albion, Iowa, for about a year about 1911; that he then transferred to a clerkship there, and in 1914 he was transferred to the post office at Poplar Bluff, Mo., where he was money order clerk until November, 1918.

After presenting the evidence which has been recited the United States rested its case, and the defendant testified on his own behalf that he was not in Poplar Bluff at any time immediately prior or immediately after January 17 or 18, 1924; that he was not there on the night of January 17, 1924; that he did not know anything about the robbery, and did not have anything to do with the alleged robbery of the post office at Poplar Bluff on the night of January 17, 1924, and this was all of his testimony on his direct examination. On his cross-examination, over the objection of his counsel, he testified that on January 17, 1924, he was at Dubuque, Iowa; that on January 10, 1924, he was at Ft. Madison, Iowa, and was living there. Over the objection of his counsel and after the statement of the court to the counsel for the government that: "You may ask him in order alone and only for the purpose of affecting his credibility as a witness. You may ask him whether he was ever convicted of any felony." He was compelled by counsel for the government to testify that he was once

convicted of a felony at Albion, Iowa; that he once pleaded guilty to a felony at Superior, Wis.; that the charge on which he was convicted was using the mails to defraud and that the charge on which he pleaded guilty was manslaughter; and that he was at the time of the trial serving his time for using the mails to defraud.

We have set forth all the relevant testimony in this case because the defendant has been sentenced to spend five years of his life less the good time he may earn and $100 fine on the finding of the jury upon this evidence that he stole the two keys at Poplar Bluff on the night of January 17, 1924, when there was no direct evidence that he did so.

[1] Counsel for the government argue that the fact that on April 15, 1924, when the defendant was arrested, 87 days after the keys were missed at Poplar Bluff, they were found among the effects of the defendant, raised the legal presumption that he stole them on January 17, 1924. Conceding that facts and circumstances may exist in a case from which such a presumption may arise from the recent possession by a defendant of stolen property that he had guilty knowledge that the property was stolen, and hence that he was the thief, nevertheless, in such a case the presumption that the defendant was the thief rests on the presumption that he had guilty knowledge that the property was stolen. In the case in hand the only evidence against the defendant was his possession of the missing keys and the mere possession of stolen property is insufficient to sustain a finding that the possessor had guilty knowledge that it was stolen, much less, the subsequent presumption that he was the thief. Degnan v. U. S. (C. C. A.) 271 F. 291; Kasle v. U. S. (C. C. A.) 233 F. 878, 888, 889, 890, and cases there cited; Minor v. State, 55 Fla. 90, 96, 45 So. 818.

[2] Moreover, the possession of stolen goods alone raises no presumption of guilty knowledge or of stealing by the possessor, unless it was recent, so recent that ample time and opportunity may not have been given to transfer the stolen property from the thief to another between the date of the theft and that of the arrest or seizure. In Reg. v. Langmead, 10 L. T. 350, 351, speaking of recently stolen sheep knowing them to be stolen, Pollock, C. B., said:

"No doubt, upon the evidence, no other person than the prisoner appears distinctly to enter into the transaction, and all that appears is that the prisoner was found very recently in possession of the stolen sheep. That prima facie is evidence of stealing rather than of receiving, but in no case can it be said to be exclusively such, unless the party is found so recently in possession of stolen property, and under such circumstances as to exclude the probability of receiving, as where a party is stopped coming out of a room with a gold watch which has been taken from the room; but if he has left the room so long as to render it probable that he may have received it from some one else, then it may be evidence either of stealing or of feloniously receiving."

Eighty-seven days after the alleged theft was not so recent a possession under the facts and circumstances of this case as to sustain a finding of either guilty knowledge of the defendant that the keys were stolen property or of the fact that he was the thief.

[3] Not only this, but the legal presumption was that the defendant was not guilty of the alleged theft, or of knowledge that the keys were stolen, and the burden was on the government to prove his guilt beyond a reasonable doubt. There was no evidence against the defendant, except the single fact that the stolen keys were found in his possession at Postville, Iowa, 87 days after they were missing. All the other evidence was in his favor. He did not live in or near Poplar Bluff, he had not been employed there since 1917, and the keys were first missed on the morning of January 18, 1924. The postmaster testified that he knew the defendant and had not seen him in the vicinity of that place near the time of the theft; no witness came to testify that he had been in that vicinity. The day of the alleged theft one or both of the keys were given out in the morning to a letter carrier, carried and used by him during that day. It was the rule and practice that those keys should be returned to the clerk of the money order department each evening and locked in the vault by him. When the substitute letter carrier got through that evening it was 6:10 p. m., the money order department was customarily closed at 6 p. m., it was closed when he returned and he left the keys on a shelf on a door that opened into the money order department, and they were not in the vault that night. When he left that night there were two clerks in the post office and one or two clerks were in the post office during many hours between the time he left and the time the next day when the two keys were missed. There was no evidence connecting the defendant in any way with the alleged burglary or taking of the keys or with the letter carrier who last had them on January 17, 1924; all the evidence presented against the defendant was circumstantial.

[4] In order to sustain a conviction of a crime on circumstantial evidence, it must be such as to exclude every reasonable hypothesis, but that of the guilt of the accused; the facts proved must all be consistent with and point to his guilt only and inconsistent with his innocence. Vernon v. U. S. (C. C. A.) 146 F. 121, 123, 124. The Circuit Court of Appeals of the Second Circuit in Nosowitz v. U. S., 282 F. 575, 578, declared that: "Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial judge to instruct the jury to return a verdict for the accused, and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of this court to reverse a judgment against the plaintiffs in error." To the same effect are Union Pacific Coal Co. v. U. S. (C. C. A.) 173 F. 737; Sullivan v. U. S. (C. C. A.) 283 F. 865; Wright v. U. S. (C. C. A.) 227 F. 855, 857; Hendrey v. U. S. (C. C. A.) 233 F. 5, 18; Edwards v. U. S. (C. C. A.) 7 F.(2d) 357, 360; Siden v. U. S. (C. C. A.) 9 F.(2d) 241, 244; Ridenour v. U. S. (C. C. A.) 14 F.(2d) 888, 893.

[5] The evidence in this case utterly failed to exclude every other hypothesis but that of guilt. The hypothesis that one of the clerks in the post office who was present there in the evening of January 17, 1924, picked up the keys which the substitute letter carrier had left lying on the table outside the money order department, dropped or laid them elsewhere, whence they had been transferred by him or others until they had come to the possession of the defendant, the hypothesis that some thief had stolen them, then lost them, and the defendant had innocently found them, or that in many other ways without the theft of the defendant they had come to his possession, is, under all the evidence, more probable in the face of the legal presumption of the defendant's innocence and the requirement that his guilt be proved by the government beyond a reasonable doubt before his conviction, than the hypothesis that he was guilty of this crime.

[6] Counsel for the United States object to the consideration or action of this court in this case under this writ of error, because, while in the course of the trial the defendant's counsel recorded many objections to rulings of the court, he recorded no exceptions and made no motion or request that the court direct the jury to return a verdict in the defendant's favor. But, since the decision of the Supreme Court in Wiborg v. U. S., 163 U. S. 632, 659, 16 S. Ct. 1127, 1197, 41 L. Ed. 289, there has been and still exists an alleviation in the interest of justice of the strict rule and practice that no relief whatever may be granted by the federal appellate courts, except on recorded objections or exceptions to rulings in the trial courts, to the effect that in criminal cases involving the life or liberty of the accused the appellate courts of the United States may notice and correct, in the interest of a just and fair enforcement of the laws, serious errors in the trial of the accused fatal to the defendant's rights, although those errors were not challenged or reserved by objections, motions, exceptions, or assignments of error. Crawford v. U. S., 212 U. S. 183, 194, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; Weems v. U. S., 217 U. S. 349, 30 S. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705; August v. U. S. (C. C. A.) 257 F. 388, 392; McNutt v. U. S. (C. C. A.) 267 F. 670, 672; Lamento v. U. S. (C. C. A.) 4 F.(2d) 901, 904, and cases cited. This is a criminal case, the liberty of the defendant below for five years of his life, less good time he might earn, is at stake; if he is innocent of the crime charged against him, an irreparable injury will be inflicted upon him by the affirmance of the judgment before us. After a careful scrutiny of all the evidence and the proceedings in the trial of this case, we cannot divest our minds of the conclusion that there was not sufficient evidence of the guilt of the accused at his trial to sustain the verdict of his conviction under the established rules of law to which reference has been made.

The judgment is accordingly reversed, and the case remanded to the court below for further proceedings.