PER CURIAM.
The appellant was informed against, charged with buying, receiving or aiding in the concealment of stolen property, to wit: a credit card.[1] The defendant waived jury trial, and was tried before the court. At the close of the state’s case the defendant moved for a directed verdict and judgment of acquittal. The motion was denied, following which the defendant produced evidence in his behalf including his testimony. After the defense rested the state produced a rebuttal witness. At the close of the case the defendant renewed his motion for acquittal, which was denied. Thereupon the trial court found and adjudged the defendant guilty of the charge. On behalf of the defendant a motion for new trial was made orally, and dictated into the record as provided for by Rule 1.590(b) CrPR, 33 F.S.A. The motion was denied and sentence was imposed. The defendant appealed.
The evidence presented by the state showed that upon arrest of the defendant for vagrancy, he was warned of his rights and voluntarily submitted to questioning in which he revealed that shortly before that date (March 6, 1969) he had moved to Florida from Maryland, and stated that the credit card found in his possession, which bore the name of another person (Robert Ortegon), belonged to his step-brother. Ortegon (who was not the defendant’s step-brother), testified that he resided and *32 was employed in Washington, D.C.; that the credit card had been stolen from him on a week end in the latter part of February 1969. He stated he had left his coat, containing his wallet, which in turn contained the credit card, in his automobile locked and parked in front of his place of residence in Washington, and that the following morning he found the car had been broken into and the jacket and his wallet .Stolen therefrom, and that he reported the matter to the local police.
After the state rested and the defendant’s motion for acquittal was denied, the defendant testified that some time during the latter part of February of 1969, he accompanied a man named Johnson, whom he had known for a substantial period, to the latter’s residence where Johnson roomed with Ortegon; and the defendant stated that while there he had taken the Ortegon credit card from a bureau drawer. He testified that he had been introduced to Orte-gon some time earlier by their mutual friend Johnson. In the rebuttal testimony given by Ortegon, who previously had testified he was not acquainted with the defendant, he stated it was possible he had met the defendant, and also that it was possible the credit card could have been stolen from his room, rather than from his automobile.
The appellant presented three contentions. The first was that the court erred in denying his motion to suppress the credit card as evidence, as being the fruit of a search predicated upon an unlawful arrest for vagrancy. We reject that contention. When made, the arrest was lawful, under § 856.02 Fla.Stat., F.S.A. See Newbold v. State, Fla.App.1969, 229 So.2d 876, 877.
Appellant claims error in the denial of his motion for acquittal made at the close of the state’s case, contending the evidence presented by the state failed to show the essential element of knowledge on his part that the credit card was stolen property. We find no error there. In order to sustain the charge the state was required to show that the accused had “knowledge of the stolen character of the goods or of circumstances that would put one on inquiry as to their stolen character.” Worster v. State, 82 Fla. 463, 90 So. 188; Winton v. State, 87 Fla. 104, 99 So. 249; Williams v. State, 106 Fla. 225, 143 So. 157. In Hart v. State, 92 Fla. 809, 110 So. 253, 255, the Supreme Court said: “A necessary ingredient of the offense of receiving stolen property knowing it to have been stolen is knowledge on the receiver’s part at the time he receives the thing stolen that the property was stolen, or of such fact as would put a man of ordinary intelligence and caution on inquiry.”
It is common knowledge that an owner of a credit card is inclined to safeguard it against loss or theft, in order to avoid financial liability to him from improper use thereof if it should come into the hands of another person. Therefore, one who buys or otherwise receives a credit card from a person other than the one to whom it shows on its face is its owner, has good reason to assume the card was either lost by or stolen from the owner. The state’s evidence showed that when this credit card was found in the possession of the defendant he did not assert that he had found it as a lost item, but falsely stated the card belonged to his step-brother, implying he was properly in possession thereof. In our view the evidence presented by the state sufficiently met the requirement pronounced in the above cited cases that the circumstances be such as would put a man of ordinary intelligence and caution on inquiry as to whether the item was stolen property.
The appellant’s third contention, which was a challenge of the sufficiency of the evidence to support the conviction was not raised in the trial court by motion for new trial, and therefore is not presentable here. State v. Wright, Fla. 1969, 224 So.2d 300.
Affirmed.

. The wording of the charge as laid in the information was as follows: “did unlawfully, knowingly and feloneously buy, receive or aid in the concealment of certain stolen property, to-wit: one (1) credit card, the property of Robert Ortegon, which said property the defendant well knew to have been stolen, in violation of § 811.16 Florida Statutes [F.S.A.]